## TRAYSTMAN, CORIC AND KERAMIDAS *v.* ANDREW J. DAIGLE (AC 24040)

Lavery, C. J., and Bishop and West, Js.

844

Argued June 10—officially released September 7, 2004

Lloyd L. Langhammer, for the appellant (plaintiff).

Martin M. Rutchik, with whom was Sharon L. Gibbs, for the appellee (defendant).

*Opinion*

WEST, J. In this action on a promissory note to pay $26,873 for legal services, the plaintiff law firm, Traystman, Coric and Keramidas, appeals from the judgment of the trial court, rendered after a trial to the court, concluding that the note was void and unenforceable. The issue on appeal is whether the court properly found that the note was signed under duress.[1] We affirm the judgment of the trial court.

The court found the following facts. The plaintiff represented the defendant, Andrew J. Daigle, in his divorce case. A second year associate from the firm,

---

[1] The plaintiff also challenges the propriety of the court's decision to permit evidence as to the reasonableness of the legal fees that the defendant, Andrew J. Daigle, promised to pay by signing the note, its interpretation of General Statutes § 49-7 and its understanding of the complexity of the defendant's divorce case in determining the reasonableness of the fees. The defendant had raised "excessive and unreasonable" fees, in addition to duress, as a separate special defense to the note. Because we conclude that the court's findings with respect to duress were not clearly erroneous, we need not address the plaintiff's other claims.

Scott McGowan, handled the defendant's two day divorce trial. After the first day of trial, April 10, 2002, McGowan told the defendant that he must sign a promissory note in the amount of $26,973, representing amounts then owed to the firm, or else he would withdraw from the case, and the defendant would be forced either to get another attorney or to proceed by himself. The defendant responded that he wanted another attorney, Martin M. Rutchik,[2] to examine the note. McGowan urged the defendant to sign the note and assured him that a copy would be sent to Rutchik. Feeling that he had no other choice, the defendant signed the note dated April 10, 2002. The defendant claimed that the words "[d]ated at Norwich, Connecticut, this 12 day of April, 2002," handwritten onto the note above his signature, were written by someone else after he had signed the note. The court concluded that the note was signed under duress. On appeal, the plaintiff claims that the court's findings supporting its conclusion are clearly erroneous. We disagree.

"[O]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in whole record, those facts are clearly erroneous. . . .

---

[2] Rutchik represented the defendant in a personal injury case at the time of the divorce trial.

"Contracts between attorney and client fall naturally into at least two categories: (1) those made before the relationship of attorney and client has commenced or after the relationship has terminated; and (2) those made during the relationship. The agreement between the plaintiff and the defendant, whatever it was, was made during the existence of the relationship. Courts of equity scrutinize transactions made between attorney and client during the existence of the relationship with great care and if there are doubts they will be resolved in favor of the client." (Citation omitted; internal quotation marks omitted.) *Noble* v. *White*, 66 Conn. App. 54, 57–58, 783 A.2d 1145 (2001).

"For a party to demonstrate duress, it must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. . . . The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will. . . .

"Where a party insists on a contractual provision or a payment that he honestly believes he is entitled to receive, unless that belief is without any reasonable basis, his conduct is not wrongful and does not constitute duress or coercion under Connecticut law . . . ." (Citations omitted; internal quotation marks omitted.) Id., 59. It is also well settled that "[c]ontracts signed under an attorney's threat to withdraw from the case [are voidable] because of undue influence and the relatively helpless situation of the client, who would otherwise be forced into the often impractical alternative of starting all over again with another attorney who is unfamiliar with the case." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 653, 850 A.2d 145 (2004).

The plaintiff challenges the court's finding of a wrongful act or threat as required by the special defense of duress. The plaintiff argues that the possibility of signing a promissory note had been discussed with the defendant prior to April 10, 2002, that the note was entered into by the firm with the honest belief that it was entitled to the entire amount of legal fees stated therein and that the resulting transaction was fair to the defendant. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Noble* v. *White*, supra, 66 Conn. App. 60.

On the basis of a review of the entire evidence, we conclude that the court's findings are supported by the evidence and that no error has been made in its conclusion that the defendant signed the note under duress. With respect to the plaintiff's argument that it honestly believed that it was entitled to $26,873, we note that the court was "firmly convinced that the purpose of having [the defendant] sign the note . . . was to guarantee payment to the firm and to prevent the court from examining whether or not the fee was reasonable." The court found, to the contrary,[3] that the testimony of Gary Traystman, a partner in the firm, was not credible, and this court is in no position to reach a different conclu-

---

[3] Traystman testified that "the reason for the note I presume was to make sure that [the defendant] and attorney McGowan agreed on what was owed. It would protect [the defendant], and it would protect our office. That's what the intent—that's why I ask a client to sign a promissory note. That's what I do when I charge for bonus fees. That note protected [the defendant] and our office as well."

sion. The trial court, however, did find credible the defendant's testimony that McGowan threatened to withdraw after the first day of trial if the defendant did not sign the note. Unlike the situation in *Noble*, the defendant was presented with the note for the first time during the course of his trial. See *Noble* v. *White*, supra, 66 Conn. App. 60–61. We conclude that there was ample evidence in the record to support the court's finding of a wrongful act or threat on the part of the plaintiff.

On the issue of whether the defendant was left with any reasonable alternative to acquiescing to the plaintiff's threat of withdrawing from the case, the court credited the defendant's testimony that he believed that he had no choice but to sign the note. Again, this court has no authority to disregard the trial court's findings with respect to the credibility of witnesses. The defendant was presented with the note and the threat that accompanied it after the first day of a two day trial. The defendant's request to show the note to Rutchik before signing it was rebuffed by McGowan. The facts of this case support the court's conclusion that the defendant was left with no reasonable alternative but to sign the note, which he did.

Finally, we also conclude that the evidence supported the court's finding that the defendant's act of signing the note was unfair to him. The note was presented to the defendant after the first day of his divorce trial, at a time when he especially depended on the plaintiff's services, and he was forced to sign it before an independent attorney could examine it for him. Moreover, because a promissory note is a written contract to pay a certain amount of money, the defendant's promise to pay the fees owed to the plaintiff, by signing the note, precluded him from later challenging their reasonableness. See *Alco Standard Corp.* v. *Charnas*, 56 Conn. App. 568, 571, 744 A.2d 924 (2000). Despite hearing testimony to the contrary by Traystman, the court spe-

cifically found that the plaintiff's act of presenting the note to the defendant was aimed at precluding the possibility of a later challenge to the reasonableness of the fees owed to the firm. The determination of the plaintiff's intent in presenting the defendant with the promissory note was a question of credibility for the court to decide. See *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

The court's findings supporting its conclusion that the defendant signed the note under duress were not clearly erroneous. Because the court's finding of duress rendered the note void and unenforceable, we need not consider the plaintiff's other claims.

The judgment is affirmed.

In this opinion the other judges concurred.